[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
By his Amended Complaint dated January 22, 1993, the CT Page 3062 Plaintiff brings this action seeking a declaratory judgment that he is a valid stockholder in Cliffside Country Club, Inc. In its Answer To Amended Complaint, the Defendant denies that the Plaintiff is a valid stockholder.
The Plaintiff claims that the Corporate By-Laws do not require a full family member of the Defendant Club to turn in his or her share of stock upon resignation from the Club, and that, even if the Court finds that the By-Laws do so require, such a restriction on shares cannot be imposed on the Plaintiff under Section 33-306a of the Conn. General Statutes, because there is no evidence that he voted in favor of those By-Laws. The Plaintiff therefore claims that even though he resigned from the Club, he is still a valid stockholder.
The Defendant claims that the By-Laws provide that a resigning full family member must return his share of stock to the Corporation, and since the Plaintiff did resign as a full family member of the Club, he is no longer a valid stockholder.
Section 52-29(a) of the Conn. General Statutes, provides as follows:
 "The superior court in any action or proceeding may declare rights and other legal relations on request for such a declaration whether or not further relief is or could be claimed. The declaration shall have the force of a final judgment."
 "In an action seeking a declaratory judgment, the sole function of the trial court is to ascertain the rights of the parties under existing law."
Middlebury v. Steinman, 189 Conn. 710, 715 (1983).
It was stipulated in writing and made part of the record in this case, that four stated persons, three of whom are present members and one who is a former member, would testify that they were original members of the Club, that they were told at an organizational meeting that the initiation fee was to be $2500.00 plus $500.00 tax, which would entitle them to full family membership and a share of stock, that the stock would have to be returned to the Club upon a member's resignation, with the resigning member to receive 80% of his initiation fee if there were 350 members of the Club and a waiting list; and CT Page 3063 that if there weren't 350 members and a waiting list, the resigning member would have to return his share of stock without receiving any payment. The parties also stipulated that this testimony would be treated as if the four persons had so testified on the witness stand under oath in this trial.
After considering the testimony and exhibits presented in this case, and after weighing the credibility of the various witnesses, the Court finds the following facts:
The Plaintiff joined Cliffside Country Club at its inception in 1960 by paying $2500.00, which entitled him to a full family membership and one share of stock in Cliffside Country Club, Incorporated. The Plaintiff's stock certificate contained the following language:
 "This stock shall be non-transferable, except that in the case of death, the ownership thereof shall pass to the estate of the holder to be disposed of in accordance with the terms of his will or in accordance with the laws of the State of Connecticut relating to intestacy."
The Certificate of Incorporation, dated September 8, 1959, authorized 4650 shares of Common A stock, and 350 shares of Common B stock. It also provided that in the event of the redemption of all Common A stock, Common B stock shall then acquire the sole voting rights and control of the affairs of the corporation. Pursuant to a motion approved at a general Club membership meeting on July 2, 1962, the Class B Shareholders purchased all the Class A stock from the original incorporators/developers, leaving only the Class B stock outstanding.
Shares of stock were issued to full family members of the Club only.
The number of authorized shares of Class B stock has never varied from 350. The Corporation is a not for profit Corporation.
The Plaintiff was one of the original members of the Cliffside Country Club, who, prior to joining, were told by the developers that upon payment of an initiation fee of $2500.00, they would become members of the Club, which was restricted to CT Page 3064 350 members, that each member would receive a share of stock in Cliffside Country Club, Incorporated, that if they resigned from the Club they would have to return their share of stock to the Club, and if there were 350 members at that time and a waiting list to join, they would receive 80% of their initiation fee; otherwise they would not be paid anything, although they would still have to return their stock.
No new members could be admitted until a share was turned in, once the membership reached 350, regardless of how many people were on the waiting list.
The 1969 By-Laws, Article 1X, Par. B, adopted unanimously at the annual membership meeting on November 13, 1969, state that:
 "A member may resign from the Club and return his stock to the Corporation and will be entitled to a refund of eighty (80) percent of the stock and/or membership fee (less taxes) paid by him if there are one or more membership applications pending that cannot be accepted because no vacancy exists in the Club's membership."
The Plaintiff has not claimed either in the Amended Complaint or in his testimony that he was not at that meeting. He was on the Board of Governors at that time. He was asked by his attorney if he recalled that meeting, and he said "I can't remember the exact meeting."
On August 1, 1960, the Club issued 213 shares of stock to the original members, one of whom was the Plaintiff. Each share contained the following language on the back of the certificate
 "This stock shall be non-transferable except that in the case of death, . . . ."
This stock was not an `investment' nor was it an `asset' such as would be listed on a financial affidavit.
The primary purpose of making the stock "non-transferable" was to make sure that the right to manage the affairs of the Club and to control its destiny, remained in those who were members of the Club, and not in the hands of people who might be remote in time, place and interest in the Club. CT Page 3065
Conclusion
The Plaintiff joined the Cliffside Country Club at its inception in 1960, pursuant to a contract formed by his acceptance of an offer from the developers. They offered him a full family membership, to be evidenced by a single, non-transferable share of stock in Cliffside Country Club, Incorporated, upon payment of an initiation fee of $2500.00, with a condition that the share of stock would have to be returned to the Club upon his resignation, with the Plaintiff to receive back 80% of his initiation fee provided that there were 350 members of the Club and a waiting list. The Plaintiff accepted this offer by paying the initiation fee and he thus became a full family member of the Club, and remained as such for approximately twenty-nine years.
The considerable testimony in this case that the original members of the Club, such as the Plaintiff, were told prior to their acceptance of the offer of membership, that return of their stock upon resignation was mandatory, is buttressed by the fact that mandatory return of the stock was essential to the continuation and meaningful governance of the Club. If stock ownership could be separated from Club membership, persons who had no connection or relationship with the Club, and who were paying no dues, could control the affairs of the Club. This would be a nightmarish situation that surely was never intended by the developers or by the joining members. This situation would arise if a majority of the stockholders were non-members, which could easily happen if people who resigned did not have to return their stock. Since there are 350 authorized shares, once 350 members were taken in, and 350 shares issued, no new full family member could be admitted unless and until a share was turned in, which might never happen. Thus the number of members could be gradually reduced to zero if everyone who resigned chose not to return their stock. It defies common sense to believe that the parties intended when starting the Club, to set-up a membership and stock structure that carried within it the seeds of destruction of the Club itself. The 1969 By-Laws, Article 1X, Par. B that state that "A member may resign from the Club and return his stock to the Corporation and will be entitled to a refund of eighty (80) percent of the stock and/or membership fee (less taxes) paid by him if there are one or more membership applications pending that cannot be accepted because no vacancy exists in the Club's membership," is construed by the CT Page 3066 Court to mean, based on parol evidence presented, which explained the ambiguity contained in the words "A member may resign from the Club and return his stock," to mean that if a member chooses to resign from the Club, he or she must return his or her share.
This by-law did not change, but rather reflected the terms of the agreement entered into by the Plaintiff when he was admitted to the Club.
The Plaintiff claims that throughout the 1970's, the Board of Governors of the Club consistently took the position that the Plaintiff is taking in this case. The Court views all the testimony in the case as showing that the Board of Governors was aware of the problem that has resulted in this lawsuit, but not that it agreed with the Plaintiff's position on that problem.
The Plaintiff also claims that provisions restricting a stockholder's right to sell or transfer his stock are regarded with disfavor and are strictly construed. However the Plaintiff accepted without objection his stock certificate showing unequivocally that it was non-transferable; and now more than thirty years later has decided to object to it. (Plaintiff's Trial Memorandum, January 22 and February 16, 1993). Furthermore the restriction in question (non-transferability) was a reasonable restriction in that it contributed to the objective of having Club members control the affairs of the Club rather than those affairs being controlled by outsiders; in that this restriction was likely to promote the best interests of the Club; and in that it served to make continued existence of the Club more likely.
Section 33-306a of the Conn. General Statutes leaves it to the courts to determine the types of restrictions that are illegal. This Court concludes that the restriction on the Plaintiff's share transfer was reasonable.
Based on all of the above, the Court in this declaratory Judgment action, declares that the Plaintiff, Bernard Lapuk, is not a valid stockholder in Cliffside Country Club, Incorporated.
Richard A. Walsh, J. CT Page 3067